**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PAMELA CURRY, *et al.*,** | : | |
| | : | |
| **Plaintiffs,** | : | **Case No. 2:25-cv-949** |
| | : | |
| **v.** | : | **Judge Algenon L. Marbley** |
| | : | |
| **ANNETTE CHAMBERS-SMITH *et al.*,** | : | **Magistrate Judge Kimberly A. Jolson** |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

This matter comes before this Court on Defendants' Annette Chambers-Smith, Christopher Lambert, and Bryan Palmer ("Defendants") Motion to Dismiss Plaintiffs' Pamela and Gregory Curry ("Plaintiffs") Complaint for failure to state a claim upon which relief can be granted. For the reasons set forth below, Defendants' Motion is **GRANTED.**

## I. BACKGROUND

This case arises under 42 U.S.C. § 1983, and specifically, the Prisoner Litigation Reform Act ("PLRA"). Plaintiffs Pamela and Gregory sued Defendants Annette Chambers-Smith, director of the Ohio Department of Rehabilitation and Correction ("ODRC"), Chief Inspector Christopher Lambert, and Warden Bryan Palmer on August 21, 2025. (Compl., ECF No. 1). Plaintiffs allege that their in-person visitation privileges have been permanently suspended following a contraband citation for Plaintiff Gregory Curry ("Curry"). (*Id.* at ¶¶ 14–15).

Curry is currently incarcerated at the Ohio State Penitentiary and Plaintiff Pamela Curry is Gregory's wife. (*Id.* at ¶ 13). The couple has conducted in-person visitation for an extended period while Curry has been incarcerated. (*Id.*). Plaintiffs allege that another inmate "illegally" used Plaintiff Pamela Curry's address as the return address on a package containing contraband that was

sent into the institution. (*Id.* at ¶ 14). As a result of the package, Curry was issued an "RIB ticket," a hearing was conducted without Plaintiff present, and Defendants determined that in-person visitation between the Plaintiffs shall be permanently suspended while Curry is incarcerated, however, Plaintiffs have still been permitted video visitation. (*Id.* at ¶¶ 14–15).

On October 16, 2025, Defendants moved to dismiss each cause of action for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 5). Plaintiffs responded in opposition on December 8, 2025, (ECF No. 10), and Defendants replied on December 19, 2025. (ECF No. 11). The matter is ripe for review.

## II. STANDARD OF REVIEW

### Motion to Dismiss

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Rule 12(b)(6) evaluates the sufficiency of the complaint, and permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a motion tests the complaint's cause of action, and is "not a challenge to [its] factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). Thus, in evaluating a Rule 12(b)(6) motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff, accept [all] allegations as true, and draw all reasonable inferences in [its] favor." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotation marks and citation omitted). This favorable treatment of the complaint applies to well-pleaded factual allegations. Complaints cannot rest on legal conclusions, as "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" are insufficient; similarly, factual assertions cannot rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). In sum, the facts alleged must be sufficient to "raise a right to relief above the speculative level," such that the complaint states a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 555, 570; *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

Beyond the complaint itself, courts may also consider exhibits attached to the complaint, "public records, items appearing in the record of the case and exhibits attached to the defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430.

## III. LAW & ANALYSIS

### A. Plaintiffs' First Amendment Claim

Plaintiff first raises a First Amendment argument, asserting that Defendants' permanent restriction on in-person visitation between husband and wife violates Plaintiffs' freedom of association. (ECF No. 1 at ¶ 21). Plaintiffs argue that the permanent ban is not related to "any penological interest," and neither Plaintiff was charged or convicted for the conveyance of the contraband. (*Id.* at ¶ 26). Conversely, Defendants argue that Plaintiffs fail to state a First Amendment claim because the alleged restriction on in-person visitation is reasonably related to legitimate security concerns, is not a total denial of association, and is within the bounds of constitutional limitations on prisoner rights. (ECF No. 5 at 6). Defendants, specifically, contend that the restriction on in-person visitation is related to a "legitimate penological interest" in institutional security following a contraband incident. (*Id.*).

The United States Constitution "protects 'certain kinds of highly personal relationships." *Overton v. Bazzetta*, 539 U.S. 126, 131, 123 S. Ct. 2162, 2167, 156 L. Ed. 2d 162 (2003) (quoting *Roberts v. United States Jaycees,* 468 U.S. 609, 618, 619–620, 104 S.Ct. 3244, 82 L.Ed.2d 462

(1984)). Outside of the context of incarceration, case law discusses the extent to which the Constitution secured the right to "maintain certain familial relationships, including association among members of an immediate family. . ." *Id.* (citing *Moore v. East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (plurality opinion) (citation omitted)). However, "freedom of association is among the rights least compatible with incarceration." *Id.* (citation omitted)

In *Turner v. Safley*, the Supreme Court set out four factors for courts to consider when confronting the reasonableness of prison regulations and restrictions: (1) there must be a "valid, rational connection" between the regulation and government interest that it justifies; (2) whether alternative means of exercising the right remain open to the inmate; (3) any impact the accommodation will have on other inmates, guards, and allocation of prison resources; and (4) absence of alternatives. 482 U.S. 78, 89–91, 107 S. Ct. 2254, 2261–62, 96 L. Ed. 2d 64 (1987).

Here, Plaintiffs' complaint has not alleged facts sufficient to show that the visitation restriction is unreasonable. In *Overton*, the Supreme Court recognized that "drug smuggling and drug use in prison are intractable problems" and that "withdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior." 539 U.S. at 134. The facts alleged by Plaintiffs simply do not show that Defendants' use of an in-person visitation limitation following an incident involving contraband smuggling is not rationally connected to the institution attempting to control drug smuggling and drug use within the prison. Plaintiffs do not allege that the restriction is not valid or rational, only that neither Plaintiff was involved in the conveyance of the contraband, and that it was another inmate. (ECF No. 1 at ¶ 26).

Additionally, alternative means of association remain open to Plaintiffs. The *Turner* court cautioned courts to be conscious of the "judicial deference owed to corrections officials" where

there are other avenues available to the inmate to exercise the right. *Turner*, 482 U.S. at 90. In the case before this Court, Plaintiffs admit that Defendants "have allowed video visitation," but argue that this does not allow them to "associate in the way they do during in-person visits." (ECF No. 1 at ¶ 24). The Court finds that inconvenience with a restriction does not amount to an allegation that Defendants have not provided Curry with alternative means to associate with his wife, Plaintiff Pamela, in this case, through the use of video visitation.

Third, Defendants allowing in-person visitation to Plaintiffs following an alleged contraband incident is likely to have a "ripple effect on fellow inmates or on prison staff." *Turner*, 482 U.S. at 90. As the Court notes above, prison officials have a legitimate interest in attempting to control the flow of contraband coming inside the prison. Here, Plaintiffs allege that "neither Plaintiff was charged with conveyance nor was convicted of any felony related to conveyance." (ECF No. 1 at ¶ 14). Plaintiffs, however, provide no further report, proof, or information regarding the alleged incident that led to the visitation ban, aside from an allegation that the ban was decided upon after a hearing, and the inmate who illegally used the address was not cited. (*Id.* at ¶ 14). Based on the facts before the Court and the deference the Court is cautioned to give to corrections officials, Plaintiffs have not pled sufficient facts to show that allowing in-person visitation to Plaintiffs would not result in other similarly situated individuals who's in-person visitation was terminated as a result of a contraband incident to request accommodations. Plaintiffs also have not pleaded facts to show that in-person visitation between them following a contraband citation would not result in strain on prison resources, generally.

Finally, Plaintiffs contend that the prison could allow in-person visitation, but that Curry would be behind glass and unable to touch the visitor, and thus there would be no opportunity to exchange contraband. (ECF No. 1 at ¶ 27). The Supreme Court found that "if an inmate claimant

can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Turner*, 482 U.S. at 91. In suggesting an alternative, however, Plaintiffs do not plead facts showing how the suggestion would have a de minimis effect on the Defendants' interest in preventing contraband from coming into the institution. If another inmate allegedly stole Plaintiff Pamela Curry's return address to send contraband to the institution, then Defendants would still have a legitimate security concern regarding contraband, regardless of whether Plaintiffs are able to touch during an in-person visit.

As such, the Court finds that Plaintiffs have not adequately stated a claim with respect to First Amendment freedom of association.

### B. Cruel and Unusual Punishment

Plaintiffs next raise a challenge to the visitation restriction under the Eighth Amendment, arguing that the ban on in-person visitation between husband and wife "violates Plaintiff Greg Curry's right against cruel and unusual punishment." (ECF No. 1 at ¶ 29). Defendants disagree, contending that the denial of in-person visitation, particularly where Plaintiffs are still permitted video visitation, does not constitute cruel and unusual punishment. (ECF No 5 at 6–7).

In order to state an Eighth Amendment claim, a plaintiff must first show facts which establish that a sufficiently serious deprivation has occurred. *Id*. The seriousness of a deprivation is measured against "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). A deprivation that amounts to the type of routine discomfort associated with prison life is not serious enough to constitute a violation of the Eighth Amendment. *Id*. In the context of the Eighth Amendment, only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of

confinement will implicate constitutional protection. *Id*. at 9. Plaintiffs must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id*. Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Mere negligence is not enough to satisfy this subjective element. *Id*. A prisoner traditionally states an Eighth Amendment claim where he is denied some element of civilized human existence due to deliberate indifference or wantonness. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Street v. Corr. Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). Accordingly, "this prong of the Eighth Amendment affords protection against conditions of confinement which constitute health threats, but not against those which cause mere frustration or annoyance." *Id*. (citing *Hudson*, 503 U.S. at 9-10).

The Court does not find that Plaintiffs' complaint has met such a standard here. Plaintiffs allege that Curry has been incarcerated for decades, and his wife, Plaintiff Pamela Curry is the light in his period of lengthy incarceration, and the restriction, thus violates his Eighth Amendment right against cruel and unusual punishment. (ECF No. 1 at ¶ 31). However, "psychological stress, like loneliness, boredom, wasted time, and the other wages of incarceration, do not in fact and therefore cannot in law constitute cruel and unusual punishment." *Lyons v. Gilligan*, 382 F. Supp. 198, 201 (N.D. Ohio 1974) (*see also Overton*, 539 U.S. at 136) (finding that a restriction on visitation for inmates with substance abuse violations was not a cruel and unusual condition of confinement).

Therefore, the Court finds that Plaintiffs have not adequately stated a claim with respect to Eighth Amendment cruel and unusual punishment.

**C. Exhaustion Requirement**

Even if the Court had found that Plaintiffs stated a claim for relief under either the First or Eighth Amendments to the U.S. Constitution, the Court cannot find that Plaintiffs have exhausted

their administrative remedies under PLRA, and thus the case would be dismissed on that basis, alone.

The PLRA attempts to eliminate unwarranted federal court interference with the administration of prisons. *See Woodford v. Ngo*, 548 U.S. 81, 93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). Thus, the PLRA seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. *Porter v. Nussle*, 534 U.S. 516, 625, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). "The text of 42 U.S.C. § 1997(e) strongly suggests that the PLRA uses the term 'exhausted' to mean what the term means in administrative law, where exhaustion means proper exhaustion." *Woodford*, 548 U.S. at 93, 126 S.Ct. 2378. Proper exhaustion requires a prisoner to "complete the administrative review process in accordance with the applicable procedural rules", which are not defined "by the PLRA, but by the prison grievance process itself." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).

A prisoner may not initiate an action under the PLRA until all available administrative remedies are exhausted. *Napier v. Laurel Cnty.*, 636 F.3d 218, 222 (6th Cir. 2011) (holding that where Plaintiff failed to take steps in accordance with the administrative procedure and failed to show the procedures were unavailable to him, he had not fulfilled the exhaustion requirement). The exhaustion requirement is "a strong one" and "is required even if the prisoner subjectively believes that the remedy is not available." *Id.* There are narrow exceptions to exhaustion, such as where the administrative procedures are unavailable to him, but prisoners "must make some affirmative efforts to comply with the administrative procedure." *Brock v. Kenton Cnty.*, 93 F. App'x 793, 798 (6th Cir. 2004). "[A] prisoner's claim is not exhausted where he has not received a merits-based response at each step of the grievance process." *Swank v. Hale*, No. 2:12-cv-1031, 2016 WL 1156517, at *7, 2016 U.S. Dist. LEXIS 38706, at *21 (S.D. Ohio Mar. 24, 2016) (holding that a

prison's mere review of a grievance is not a merits-based response sufficient to meet the exhaustion requirement).

Plaintiffs' complaint alleges that "both Plaintiffs have exhausted internal remedies, allowing them to pursue this matter in the federal court. Some internal grievances are still being processed, yet the Defendants continually restrict the visitation of Plaintiffs." (ECF No. 1 at ¶ 7). In their response to Defendants' motion, Plaintiffs similarly allege that "Plaintiff has exhausted all internal remedies by sending prison communication or kite to those in charge and appealing all of those to individuals in charge." This does not satisfy the Court. At bottom, Plaintiffs have not pled facts to show that Curry has received a merits-based response at each step of the grievance process, or provided any further detail about his grievance efforts, aside from the bare assertions that they have exhausted all internal remedies. Further, Plaintiffs themselves admit that "some internal grievances are still being processed." Therefore, the Court cannot find that Plaintiffs' administrative remedies have been exhausted so as to satisfy the PLRA.

**D. Supervisory Defendants**

Plaintiffs bring claims against Chambers-Smith, Lambert, and Palmer in their individual and official capacities. To establish liability under Section 1983 against an individual defendant, a plaintiff must plead and prove that the defendant was personally involved in the conduct that forms the basis of his complaint. *Greene v. Barber,* 310 F.3d 889, 899 (6th Cir.2002); *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir.1999). A party cannot be held liable under Section 1983 unless the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *Leach v. Shelby Co. Sheriff,* 891 F.2d 1241, 1246 (6th Cir.1989). Supervisory liability cannot be based upon the failure to act. *Summers v. Leis,* 368 F.3d 881, 888 (6th Cir.2004).

Plaintiffs allege that Defendant Lambert "has received and ignored the grievances sent to him by both Plaintiffs regarding visitation," and that Defendant Palmer has been made "aware that the process for denying visitation violated their due process." (ECF No. 1 at ¶¶ 11–12). Plaintiffs further allege that Defendant Chambers-Smith is "responsible for setting policy for visitation revocation. (*Id.* at ¶ 10). Defendants argue that these bare allegations fail to allege any specific facts demonstrating that any of the named defendants participated in the alleged unconstitutional conduct, or otherwise authorized or acquiesced. (ECF No. 5 at 8–9). This Court agrees. Outside of that which the Court quotes above, Plaintiffs do not allege any additional facts with regard to the personal involvement of the individual defendants in the alleged unconstitutional restriction on in-person visitation. Likewise, Plaintiffs response in opposition to Defendants motion similarly states that "it is difficult to say with certainty what each of the defendants actually did." (ECF No. 10 at 6). Plaintiffs' allegations are, at best, conclusory, and are not sufficient to state a section 1983 claim against the named defendants, individually.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 5) is **GRANTED.**

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 11, 2026**